## A06A1557. MULVANEY v. THE STATE.
### (636 SE2d 762)

BERNES, Judge.

A Dougherty County jury found Michael Mulvaney guilty of three counts of cruelty to children in the third degree, one count of aggravated assault, and two counts of aggravated battery. Mulvaney claims that the trial court erred in failing to suppress his statements to police because the interviewing officer did not terminate the interview when Mulvaney invoked his right to remain silent and to have counsel present. For the reasons set forth below, we disagree and affirm.

"On appeal, the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review." (Citations and punctuation omitted.) *State v. Davison*, 280 Ga. 84, 85 (1) (623 SE2d 500) (2005). So viewed, the evidence adduced at the *Jackson-Denno* hearing shows the following. A Dougherty County police officer received information that a child with severe injuries had been admitted to the hospital. The child, C. R., lived with her mother and the mother's boyfriend, Mulvaney. The officer contacted Mulvaney and the child's mother and told them that the police were investigating the cause of C. R.'s injuries. At the investigator's invitation, Mulvaney and the child's mother drove to the police station in Mulvaney's car, where they were interviewed separately.

The audiotape of Mulvaney's interview shows that the interviewing officer began by asking Mulvaney if he would spell his last name. Rather than answer the question, Mulvaney asked "[w]hat are we doing here?" and "what's that got to do with us?" The officer stated that they were conducting an investigation into C. R.'s injuries, and that they wanted to find out how the child got injured. Mulvaney told the officer that C. R. fell off the toilet, slipped in the bathtub, and fell out of the front door. After additional statements, during which the officer's only question to Mulvaney was "[h]ow old is she?," Mulvaney asked the officer what was wrong with the child. The officer responded "that is partly what I need to ask you."

The officer brought the interview back to basic information about Mulvaney's name, social security number, date of birth, and education level. The officer then informed Mulvaney that this was a criminal investigation and apprised Mulvaney of his *Miranda* rights. The interviewing officer asked Mulvaney if he was willing to talk about the incident. The following exchange occurred.

A. No. I'd rather have a lawyer, I mean.

Q. Okay. That's fine.

A. You wouldn't answer my questions on how she was doing and I mean what's really going on, and that's really what my concern is, how she's doing and what's going on. I mean, she was running around talkative and I even asked her when she hurt her ear, "Can you hear me?" And then she acknowledged me, you know, and then like closed her up or nothing. I talked to her and then she was doing fine. She ate and everything. I mean, she was acting fine when she left other than her ear had swelled up.

After Mulvaney continued to talk, the officer asked "what do you want to do?" Although Mulvaney indicated that he did not want to say any more, he continued to make unsolicited statements, giving several explanations for why C. R. may have been injured, including that the child had tripped on items cluttering the floor, fell off the toilet, and ran "into stuff" after lights in the house had gone off. During Mulvaney's statement, the officer reminded Mulvaney on several occasions that Mulvaney had asked for an attorney. Mulvaney continued to volunteer information without prompting from the officer.

After hearing the interviewing officer's testimony and the audiotape of Mulvaney's statement, the trial court decided to admit the statement into evidence, finding that the statement was "not the result of any direct interrogation or questions by the officer, but were the spontaneous and unsolicited statements of a . . . person who was anxious to explain."[1] "The trial court's determination of whether 'interrogation' occurred will be upheld on appeal unless clearly erroneous." *Franks v. State*, 268 Ga. 238, 242 (486 SE2d 594) (1997).

Mulvaney contends that he was subjected to custodial interrogation after he asked for a lawyer and invoked his right to remain silent. "[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by

---

[1] The trial court did not make an express finding as to whether Mulvaney was in custody when he made his statements to police, and we do not reach this issue.

the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U. S. 477, 484-485 (101 SC 1880, 68 LE2d 378) (1981). Similarly, a person subjected to custodial interrogation may at any time express a desire to remain silent, thereby ending the interrogation. *Green v. State*, 275 Ga. 569, 571-572 (2) (570 SE2d 207) (2002). "Any exercise of this right to silence must be 'scrupulously honored.'" (Footnote omitted.) Id. at 572 (2). A statement taken in violation of a suspect's right to counsel must be excluded from the state's case in chief. *Nobles v. State*, 191 Ga. App. 594, 596 (1) (a) (382 SE2d 637) (1989).

> In *Rhode Island v. Innis*, 446 U. S. 291, 300-301 (100 SC 1682, 64 LE2d 297) (1980), the U.S. Supreme Court defined the "interrogation" which must be preceded by *Miranda* warnings as the "express questioning (of a person in custody) or its functional equivalent . . . that is, . . . any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . ." The court went on to note, however, that "the police surely cannot be held accountable for the unforeseeable results of their words or actions. . . ." The *Innis* definition of "interrogation" is applicable to cases presenting an *Edwards* question. . . .

(Citation omitted.) *Walton v. State*, 267 Ga. 713, 717 (4) (482 SE2d 330) (1997).

The audiotape of Mulvaney's confession shows that immediately after Mulvaney asked for a lawyer he began making a statement prefaced by "you wouldn't answer my questions on how she was doing." As noted by our Supreme Court in *Walton*, "an accused's response to an officer's answer to a question posed by the accused is not the product of custodial interrogation." 267 Ga. at 718 (4). Mulvaney continued to talk without being questioned by the officer. Compare *State v. Nash*, 279 Ga. 646, 648-650 (3) (619 SE2d 684) (2005) (officer's questions to suspect after suspect invoked his right to remain silent was likely to elicit an incriminating response and resulting statement was inadmissible).

When Mulvaney expressed a desire not to say any more, the officer asked Mulvaney to sign a form showing that he had read Mulvaney his rights. Mulvaney then began to make additional statements without prompting or questioning by the officer. The officer reminded Mulvaney on several occasions that Mulvaney had asked for an attorney, but Mulvaney continued to talk. Under these

circumstances, the officer was not interrogating Mulvaney by choosing to listen. "Only words or actions that the police should have known were likely to elicit an incriminating response constitute interrogation." *Caldwell v. State*, 249 Ga. App. 885, 887-888 (2) (549 SE2d 449) (2001). See *Oliver v. State*, 276 Ga. 665, 667 (2) (581 SE2d 538) (2003) ("[s]tatements volunteered by appellant and not in response to questioning seeking to elicit incriminating responses are not inadmissible"). The trial court's determination that Mulvaney's statement was not made in response to interrogation is not clearly erroneous. Accordingly, we conclude that the trial court did not err in admitting the statement into evidence.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 20, 2006.

*Troy E. Golden*, for appellant.
*Kenneth B. Hodges III, District Attorney, Christopher S. Cohilas, Assistant District Attorney*, for appellee.