## A08A1505. ELLER v. THE STATE.
### (668 SE2d 755)

ADAMS, Judge.

Following a trial by jury, Alvin Eller was convicted of kidnapping, aggravated sodomy, and simple battery. On appeal he contends the evidence was insufficient to support the verdicts and that his trial counsel was ineffective in several ways. On appeal, we do not assess the weight of the evidence or the credibility of witnesses. Instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

The four-foot, eleven-inch victim had been "partying" — drinking and using cocaine — on the evening of July 3, 2003, and was hitchhiking to get home when Eller and Peggy Smith picked her up. Although she did not know them, she consented to continue partying with them. And after Eller and Smith purchased more drugs, they continued to use it outside Smith's home, which was located near other Eller family homes. Smith went inside, and while Eller and the victim were alone together, Eller got mad because the victim refused to have sex with him. The victim decided to walk home and had begun to do so. The victim testified that Eller then "come on to me

---

and I — my answer is no." She continued walking but Eller, who is six feet, three inches tall and missing one arm, followed and "got me on the ground" and held her there so no one could see them. He threatened to hit her to make her keep quiet. She testified that Eller held her there for 30 or 45 minutes "and told me what he had done to another person, another woman, and I was scared. He had threatened to kill me. He had threatened to rape me and then kill me and then rape me again." But she admitted that he did not touch, fondle or hurt her in any way at this time; he only threatened her. She screamed and two of Eller's relatives came along in a truck with a spotlight.

The victim testified that she ran to the truck begging for help. The men in the truck told her to just keep walking, that they would keep Eller occupied. So she ran on and hid in the woods briefly before continuing down the dirt road. Although she reached the nearby paved road, Eller caught up with her. Then, as she testified, Eller "drug me by the back of my hair across the grass and drug me back into the woods, more or less. It was not too far in the woods because I refused to go into the woods. I was scared." At this point, she took a beer from Eller and drank it. But Eller demanded that she have oral sex with him. She complied for "a minute or two" because she was scared for her life and felt threatened by his actions. The truck from earlier passed by again, and three of Eller's relatives witnessed the oral sex. The police then arrived.

An officer read Eller his *Miranda* rights, and Eller waived his rights and dictated a statement. Eller admitted to the basic events described by the victim but claimed no wrong-doing and that the victim consented. An officer observed a bruise on the victim's arm, which she claimed resulted from Eller grabbing her. Officers interviewed the three relatives — Paul Eller, Robert Eller and Timothy Hunnicut — who had witnessed some aspects of the encounter between Eller and the victim. Each testified solely for the defense.

The jury found Eller guilty as charged, and he was sentenced as a recidivist to life in prison for kidnapping, concurrent life for aggravated sodomy, and one year on the count of simple battery.

1. The evidence was sufficient to support the verdict of kidnapping. OCGA § 16-5-40 (a) provides that "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." "Thus, a kidnapping conviction requires evidence of some movement of the victim, but proof of even slight movement will satisfy this requirement. [Cit.]" *Gilbert v. State*, 291 Ga. App. 898, 899 (1) (663 SE2d 299) (2008). Here, there was evidence that Eller grabbed the victim by the hair and dragged her into or toward the woods against her will. See *Gilbert*, and cases cited therein.

2. The evidence was sufficient to support the verdict of aggravated sodomy. OCGA § 16-6-2 (a) (2) provides that "[a] person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person. . . ." First, "[l]ack of resistance, induced by fear, is not legally cognizable consent but is force." (Citation omitted.) *Long v. State*, 241 Ga. App. 370, 371 (2) (526 SE2d 875) (1999). Here, the victim testified that Eller threatened to kill her and that she had oral sex with him as a result. "[A] trier of fact could conclude that [Eller's] words and actions were sufficient to instill in his victim[ ] a reasonable apprehension of dangerous consequences if [she] resisted his demands." *Dasher v. State*, 281 Ga. App. 326, 329 (636 SE2d 83) (2006). See also *Raines v. State*, 191 Ga. App. 743, 744 (1) (382 SE2d 738) (1989). There is also circumstantial evidence consistent with the victim's lack of consent. Defense witnesses testified that she screamed "rape" and "stop" several times, which caused the witnesses to twice respond to see what was happening. And on one of those occasions, she jumped into the back of a truck in order to get away from Eller. See *Davis v. State*, 278 Ga. App. 628, 629-630 (629 SE2d 537) (2006).

3. The evidence was also sufficient to support the verdict of simple battery. "A person commits the offense of simple battery when he or she either: (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) Intentionally causes physical harm to another." OCGA § 16-5-23 (a). The defendant grabbed the victim by the hair and dragged her by the hair. See, e.g., *McFalls v. State*, 260 Ga. App. 578, 579 (580 SE2d 328) (2003) (defendant's conviction of simple battery for pulling victim's hair affirmed); *Carroll v. State*, 255 Ga. App. 230, 231 (564 SE2d 833) (2002) (same).

4. Eller claims his trial counsel was ineffective in several regards.

(a) First, he asserts counsel was ineffective when he failed to object to prejudicial hearsay statements made by the State's witnesses during the State's case-in-chief. Sergeant Kevin Keyfauver, who responded to the emergency call, testified that either Paul Eller or Robert Eller told him that the defendant and a woman were involved in a dispute; that they had heard screaming and therefore pursued and "found him on top of her and were concerned about what had gone on"; and that they called the sheriff's office as a result.

Special Agent Charles Sullenger of the Georgia Bureau of Investigation, who also responded to the scene, essentially read into evidence three witness statements. He testified that officers informed him that Eller had attempted to rape the victim. He testified

that Paul Eller told him that Timothy Hunnicut had witnessed a rape. And he testified that Robert Eller told him that at one point that the victim had walked away from Eller but that Eller had followed her, and she yelled "stop" at least five times; that he and Hunnicut responded to the victim's cries and found the defendant on top of her; that they drove to find the couple and it did not appear to him and Hunnicut that the defendant "had been successful in removing her clothes"; that he attempted to distract the defendant so that the victim could get away; that the victim left while they talked to the defendant, but the defendant then went looking for her; that he and Hunnicut later heard the victim yell a second time; that this caused him, Hunnicut and Paul Eller to again drive a short way to find out what was happening, whereupon they found the defendant standing up with the victim performing oral sex on him; that he asked the defendant if he was raping the victim; and that Paul called the sheriff's department and remained until deputies arrived.

Defense counsel did not object to any of this hearsay testimony. When the three witnesses testified for the defense, the State impeached them with the same information taken from the officer's notes each time they contradicted what the officer had recorded therein.

Under the standard for assessing whether trial counsel rendered constitutionally effective assistance as set out in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), a criminal defendant must show both that his counsel's performance was deficient and but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. Id. "The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. The trial court's findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous." (Citations omitted.) *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

Testimony by an officer as to statements made by witnesses during the course of a police investigation is hearsay. OCGA § 24-3-1 (a). Furthermore, the admission of such evidence can be a violation of *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), which makes clear that testimonial hearsay, as in the present case, is only admissible if the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. Nevertheless, if defense counsel, "based on reasonable strategic and tactical grounds," elects not to object to such evidence then a claim of ineffective assistance is precluded. *Beck v. State*, 292 Ga. App. 472, 474 (2) (a) (665 SE2d 701) (2008).

At the hearing on the motion for new trial, defense counsel articulated a strategy of allowing the officers to testify about the witnesses' statements without objection in an attempt to get the officers to admit that the actual witnesses, whom he intended to put on the stand, were the only people with first hand knowledge of the critical facts. This, he asserted, bolstered his own witnesses before they testified. More specifically, Eller's counsel, who was representing Eller as the contract public defender in Tattnall County, testified that his strategy was to cross-examine the officers rather than object in order to point out anything inconsistent in their testimony; to get them to admit that they were not the actual witnesses; and to show the jury that the officers' credibility, which, he acknowledged might be "very strong," would, in his words, "not carry over to the information [the officer] was testifying to, because the information may or [may] not be accurate." Thus, he sought to have the officers confirm that the information they were offering was just something that they had been told by others. He explained that the officers' testimony would therefore bolster his witnesses. He also thought that such testimony was either a hearsay exception or not hearsay at all. Further, he knew that he intended to call the three witnesses. He added, "Definitely there's no point to objecting to it, because the same information is going to come out."

"As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citations, punctuation and footnotes omitted.) *Beck*, 292 Ga. App. at 474 (2) (a). And this Court will not question an attorney's tactics and strategy unless they can be seen as being "so patently unreasonable that no competent attorney would have chosen them." (Citation, punctuation and footnote omitted.) Id. Eller has not met this standard. See also *Scott v. State*, 223 Ga. App. 479, 483 (2) (c) (477 SE2d 901) (1996) (without expert testimony, decisions presumed strategic).

(b) Eller also contends that counsel was ineffective by failing to object to prejudicial character evidence. He contends counsel should have objected to Keyfauver's testimony that he was responding to a 911 call of "a possible rape in progress."

> [U]nless it is the rare instance in which the conduct of an investigating officer is a matter concerning which the truth must be found, it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation.

(Citations omitted.) *Weems v. State*, 269 Ga. 577, 579 (2) (501 SE2d

806) (1998). And at the hearing on the motion for new trial, counsel never testified that he chose not to object to this statement for strategic reasons.

But the admission may be harmless if it is cumulative of legally admissible evidence. *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999). Paul Eller, who testified that he made the 911 call, did not testify that he had reported a rape in progress, but he was impeached with the officer's notes showing that he had made that report. Prior inconsistent statements used to impeach are substantive evidence of the matter asserted. *Gassett v. State*, 289 Ga. App. 792 (658 SE2d 366) (2008). Furthermore, Paul testified that he called the authorities based in part on statements made by Hunnicut, who admitted on cross-examination that he heard the victim yell "rape," and the victim testified that at one point Eller was trying to rape her. We find that any error in failing to object to the contents of the 911 call was therefore cumulative of admissible evidence and harmless.

(c) Eller contends trial counsel should have objected to the victim testifying about what he had done to another person. The victim testified that Eller "told me what he had done to another person, another woman, and I was scared." But this statement was admissible as a part of the res gestae of the crime. See *Hight v. State*, 195 Ga. App. 727, 729 (5) (394 SE2d 636) (1990). Counsel was not ineffective on these grounds. See *Hayles v. State*, 287 Ga. App. 601, 605 (3) (b) (651 SE2d 860) (2007) ("Counsel could not have been ineffective for failing to make a meritless objection."). Moreover, trial counsel gave specific reasons for not addressing the statement. Among other things, he thought the statement was vague, which it was, and he did not want to call further attention to it.

(d) Eller contends trial counsel should have objected to statements asserting that he was a paranoid schizophrenic. But these statements were made about another person, not the defendant.

(e) Eller contends trial counsel erred when he agreed, prior to trial, with the State's request to exclude any evidence of the victim's criminal history. At the hearing on the motion for new trial, counsel testified that he made no objection because he did not think it would have been admissible to begin with. And he thought it would look bad to cross-examine an alleged sexual abuse victim with her past behavior:

> [I]f there were some exception where it could have been brought in[,] I think it would have been bad strategy to — to a female who's complaining about being victimized in front of the jury[,] to attack her that maybe five years ago she was arrested for drugs somewhere in some other state

or some other county. I think that would have probably been offensive to the jury. So as a matter of trial strategy I didn't attack her on that. I think her criminal history was primarily . . . drug related matters. . . .

He also noted that her drug usage came out during the course of trial, including that she had been "partying" on crack cocaine. Thus, counsel's decision on this point was strategic.

(f) Eller contends trial counsel was ineffective in that he failed to offer any proposed jury charges and instead relied solely on the court's pattern charges. He first contends counsel should have requested a charge on false imprisonment as a lesser included offense to kidnapping.[1] He contends there was conflicting evidence regarding whether the victim went anywhere against her free will. See, e.g., *Boyd v. State*, 289 Ga. App. 342 (656 SE2d 864) (2008) (defendant acquitted of kidnapping but convicted of false imprisonment despite evidence that he forced her to move from room to room in a house).

The victim testified that Eller "drug me by the back of my hair across the grass and drug me back into the woods, more or less." But Eller contends this testimony is equivocal, pointing out that the victim admits to then having a beer with him before the alleged nonconsensual oral sex, which suggests that she went with him voluntarily. And three witnesses testified that when they saw the victim giving oral sex to Eller, she told them to "go on" or "leave us alone, get out of here" or everything is fine, and the encounter appeared to be consensual. But, there was no evidence that at this point in their encounter Eller held her in one place against her will. Thus, the only evidence was either that he kidnapped her by dragging her by the hair or she went with him voluntarily. Cf. *Robertson v. State*, 278 Ga. App. 376, 382 (629 SE2d 79) (2006). We find no ineffective assistance of counsel on this point.[2]

(g) Eller contends trial counsel should have sought the merger of the kidnapping, aggravated sodomy, and simple battery charges. He contends they merge as a matter of fact because the hair-pulling

---

[1] " '[A] written request to charge a lesser included offense must *always* be given if there is *any* evidence that the defendant is guilty of the lesser offense.' " (Citation omitted; emphasis in original.) *Stovall v. State*, 216 Ga. App. 138, 141 (5) (453 SE2d 110) (1995). And "[a] trial court should give a requested charge on false imprisonment as a lesser included charge to kidnapping when the evidence supports a theory that the victim was falsely imprisoned without having been asported in the manner alleged by the State. [Cit.]" *Brown v. State*, 275 Ga. App. 99, 104 (3) (d) (619 SE2d 789) (2005).

[2] The victim also testified that Eller held her down for 30 minutes or more at an earlier point in their encounter, which would have justified a charge of false imprisonment. Eller's argument, however, concerns only the later incident where he asserts false imprisonment as a lesser included offense to the hair-dragging, kidnapping incident.

incident was used as the asportation element of the kidnapping, the force that caused her to engage in sodomy, and the force used for simple battery. We disagree.

Our Supreme Court has adopted the "required evidence" test set forth in *Blockburger v. United States*, 284 U. S. 299, 304 (52 SC 180, 76 LE 306) (1932), when addressing whether an offense is "included in" another under OCGA §§ 16-1-6 (1); 16-1-7 (a) (1).[3] *Drinkard v. Walker*, 281 Ga. 211, 216 (636 SE2d 530) (2006). Under that test,

> (t)he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

(Punctuation and footnote omitted.) Id. at 215.

Here, aggravated kidnapping required proof that Eller abducted the victim, without authority, and held her against her will. OCGA § 16-5-40 (a). It did not require proof of any violence. Aggravated sodomy required proof of sodomy by force and against the will of the victim. OCGA § 16-6-2 (a) (2). Simple battery required proof of intentional physical contact that is either insulting or provoking, or that intentionally causes harm. OCGA § 16-5-23 (a). Thus, aggravated sodomy and simple battery do not merge because aggravated sodomy, unlike simple battery, requires proof of sodomy, and simple battery, unlike aggravated sodomy, requires proof of physical contact that is insulting, provoking, or intentionally harmful. See *Drinkard*, 281 Ga. at 216. The charge of aggravated sodomy was established by proof that the victim was forced by Eller's threats to perform sodomy. She testified that "the only reason" she engaged in oral sex was that she felt threatened and scared for her life by what Eller had said when he held her down for 45 minutes, not because he had dragged her by the hair.

(h) Eller also contends counsel should have requested a charge on the lesser included offense of sodomy.[4] Defense witnesses testified that when they saw the couple engaged in oral sex, the victim told them to leave them alone, that they should go away. Afterward, the

---

[3] See *Drinkard v. Walker*, 281 Ga. 211, 216, n. 32 (636 SE2d 530) (2006) for other statutory provisions concerning prohibition against multiple convictions for closely related offenses.

[4] "[B]y definition, sodomy is a lesser included offense of aggravated sodomy, and the only distinction between the two crimes is the element of force. OCGA § 16-1-6 (1) (lesser included offense); *Stover v. State*, 256 Ga. 515, 517 (2) (350 SE2d 577) (1986)." *Melton v. State*, 282 Ga. App. 685, 693 (2) (c) (639 SE2d 411) (2006).

witnesses called the police for a second time to tell them they did not need to come. A jury could infer from these and other facts, together with credibility questions regarding the victim, that the oral sex was consensual.

But "[d]ecisions about which jury charges to request are strategic and provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Wilburn v. State*, 278 Ga. App. 76, 78 (2) (b) (628 SE2d 174) (2006). At the motion for new trial hearing, trial counsel testified that he thought the court's general charges would cover everything. He also testified that he did not think a charge on lesser included offenses would be helpful because "in almost every instance when you offer a lesser included at the very least you get a conviction on that, and the Court will heavily sentence on a lesser included, so I didn't see that would have benefitted him." He also explained that his strategy was that the jury would either believe the defense or they would not. We cannot conclude that this strategy met the patently unreasonable standard. See, e.g., *Leonard v. State*, 279 Ga. App. 192, 195 (630 SE2d 804) (2006) (failure to request lesser included offense of battery in connection with aggravated assault charge based on an all or nothing defense was not patently unreasonable). See also *Scott v. State*, 223 Ga. App. at 483 (2) (c) ("the absence of expert testimony regarding trial counsel's decision not to request instructions on lesser-included offenses to aggravated sodomy, such as sodomy, . . . means that the decision is presumed to be strategic and not unprofessional").

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 16, 2008.

*Tina E. Maddox*, for appellant.
*Tom Durden, District Attorney*, for appellee.